UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

------------------------------------------------------------------X
MEVYO JEAN,

               Plaintiff,

        -against-

COUNTY OF NASSAU, "CHIEF FRANK DOE",
KAREN G. DOWLING, NICHOLAS C. PANDOLFO,
THOMAS C. BISCHOFF, KIRK T. BREWER,
LOUIS A. LANZILLOTTA, ALFRED RODRIGUEZ,
"RICHARD ROE #1-12",
HONORABLE KATHLEEN M. RICE,
ROBERT CEGIELSKI, JOHN CEGIELSKI,
BRANDON M. BARTONE, MATTHEW MALONEY,
TYLER OLLI, DANIEL JEANNOTTE, ADAM WINNE and
BILLY ARDAMIS,

               Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CV-1322 (JMA) (AYS)

FILED
CLERK

3/16/2020 9:21 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Mevyo Jean
    *Pro se Plaintiff*

Richard J. Femia, Esq.
Goldberg Segalla LLP
200 Garden City Plaza, Suite 520
Garden City, New York 11530
    *Attorney for Defendants County of Nassau, Karen G. Dowling, Nicholas C. Pandolfo,*
    *Thomas C. Bischoff, Kirk T. Brewer, Louis A. Lanzillotta, Alfredo Rodriquez and*
    *Honorable Kathleen M. Rice*

William K. Joseph, Esq.
Marcote & Associates, P.C.
108 New South Road
Hicksville, New York 11801
    *Attorney for Defendants Robert Cegielski and John Cegielski*

Michael A. Kotula
Rivkin Radler LLP
926 RXR Plaza
Uniondale, New York 11556
    *Attorney for Defendant Brandon M. Bertone*

Kirk P. Tzanides
The Tzanides Law Firm, PLLC
150 East 58th Street, 22nd Floor
New York, New York 10155
*Attorney for Defendant William Ardamis*

David W. Chefec
David W. Chefec, P.C.
244 Mineola Boulevard, Suite 102
Mineola, New York 11501
*Attorney for Defendant Daniel Jeannotte*

**AZRACK, United States District Judge:**

*Pro se* plaintiff Mevyo Jean ("Plaintiff") has brought this action against Defendants County of Nassau ("Nassau County"); "Chief Frank Doe", Karen G. Dowling, Nicholas C. Pandolfo, Thomas C. Bischoff, Kirk T. Brewer, Louis A. Lanzillotta, Alfredo Rodriquez, "Richard Roe #1-12" (the "Police Officers"); Honorable Kathleen M. Rice ("Rice"), (together with Nassau County and the Police Officers, the "County Defendants"); and Robert Cegielski, John Cegielski, Brandon M. Bertone, Matthew Maloney, Tyler Olli, Daniel Jeannotte, Adam Winne, and Billy Ardamis (together, the "College Defendants"). Plaintiff alleges various constitutional claims pursuant to 42 U.S.C. § 1983, including violations of his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as conspiracy claims and a myriad of state law claims, arising from his arrest and criminal charge. The County Defendants, and, separately, four of the College Defendants, moved for summary judgment. Additionally, Defendant Daniel Jeannotte ("Jeannotte") filed a letter motion to dismiss the claims against him. Plaintiff failed to oppose any of the motions.

For the reasons stated below, the Court grants the Defendants' motions for summary judgment on the federal claims and dismisses all of Plaintiff's federal claims.[1] Having disposed

---

[1] As discussed in Section II.E, *infra*, the Court dismisses the federal claims against the non-moving Defendants and Jeannotte *sua sponte*.

of the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, Plaintiff's amended complaint is dismissed in its entirety.

# I. BACKGROUND[2]

On March 5, 2013, Plaintiff was arrested and charged with robbery in the third degree in connection with the robbery of a cellphone belonging to John Cegielski. (County Defs.' 56.1 St. ¶¶ 5, 13.) At some point the charge against Plaintiff was reduced to petit larceny and on February 20, 2014, the criminal charge against Plaintiff was dismissed. (See Jean Mevyo Affidavit submitted in opposition to the Defendants' September 29, 2014 joint motion to dismiss ("Mevyo Aff."), Ex. 6, ECF No. 30-8; AC ¶ 39.)[3]

## A. **The Incident**

On March 3, 2013, at approximately 2:30 a.m., Plaintiff, while working as a taxi driver for Dashing Dan Taxi Company, drove the College Defendants from a bar in Hempstead back to their college campus at Long Island University, C.W. Post in Old Brookville, New York. (County Defs.' 56.1 Stmt. ¶¶ 2, 3; Pl. Dep. II, 34:13–35:8.) The agreed upon cab fare was thirty-five dollars. (AC ¶ 27; J. Cegielski Dep. 51:6–25.) Though there is disagreement as to the amount of fare the College Defendants actually paid, both the Plaintiff and the College Defendants agree that they did not pay the full thirty-five-dollar fare. (Pl. Dep. I, 23:14–21; J. Cegielski Dep. 55:12–14.)

---

[2] Plaintiff has failed to respond to the Defendants' motions or to otherwise submit a statement of material facts pursuant to Local Rule 56.1. As a result, the following facts are drawn from the amended complaint (AC, ECF No. 35), the Defendants' unopposed Local Rule 56.1 Statements (County Defs.' 56.1 Stmt., ECF No. 125-1; Cegielski Defs.' 56.1 Stmt., ECF No. 124-2; Bertone and Ardamis' 56.1 Stmt., ECF No. 123-3), and the declarations and exhibits submitted in support of the instant motions, including the transcripts of Plaintiff's depositions (Declaration of Richard J. Femia ("Femia Decl."), Plaintiff's Deposition, Dec. 9, 2016 ("Pl. Dep. I"), Ex. E, ECF No. 125-8; Plaintiff's Deposition, April 2, 2018 ("Pl. Dep. II"), Ex. F, ECF No. 125-9), the transcript of Defendant Robert Cegielski's deposition (R. Cegielski Dep., September 19, 2017, Ex. J, ECF No. 125-13); and the transcript of Defendant John Cegielski's deposition (J. Cegielski Dep., November 10, 2017, Ex. K, ECF No. 125-14).

[3] Defendants Brandon Bertone and Billy Ardamis jointly moved for dismissal of Plaintiff's original complaint on September 29, 2014. (Defs.' Mot. to Dismiss, ECF No. 25.) Plaintiff, represented by counsel at the time, opposed the motion and submitted an affidavit in support of his opposition. (See Mevyo Aff., ECF No. 30-1, ¶ 9.)

According to Plaintiff, as he approached the security gate entrance to the college, all of the College Defendants exited the car without paying except for John Cegielski. (Pl. Dep. I, 16:21–18:17.) After John Cegielski assured him that he had the cab fare, Plaintiff continued to drive on campus to drop him off at Brookville Hall as he requested. (<u>Id.</u> 21:4–14.) Once Plaintiff had reached the destination, John Cegielski asked Plaintiff to stop the car, threw money on the dashboard, and ran. (<u>Id.</u> 22:10–12.) Plaintiff testified that after he counted the money which totaled just seven dollars, he exited the car, shouted, and ran after John Cegielski to get the rest of the money. (<u>Id.</u> 23:17–26:6.) He eventually caught up to John Cegielski who had tripped and fallen. (<u>Id.</u> 26:6–13.) Plaintiff testified that he asked John Cegielski if there was someone he could call to get the rest of the cab fare. (Pl. Dep. II., 56:19–21.) Plaintiff told him that he had seen the other passengers in the back seat give him money, which John Cegielski denied. (<u>Id.</u> 57:5–11.)

Plaintiff testified that John Cegielski told him to leave him alone or that he would get arrested because his uncle is some kind of police chief. (Pl. Dep. I, 27:22–28:10.) He testified that at some point, John Cegielski indicated that he could not locate his phone. (<u>Id.</u> 28:20–29:2.) He then told Plaintiff to leave him alone or his friends would come, and it would be bad for him. (<u>Id.</u> 29:21–30:7.) According to Plaintiff, "the other College Defendants returned with many other very large, muscular college students, running menacingly and aggressively toward the taxicab." (AC ¶ 30; <u>see</u> <u>also</u> Pl. Dep. I, 30:9–31:7.) Plaintiff testified that though he could not be sure because of the darkness, he believed that some of the College Defendants who had been in his cab were part of the group that was running toward him. (Pl. Dep. I, 30:13–31:7.) He claims that he then ran to his car and drove away as he feared for his safety. (AC ¶ 31; Pl. Dep. I, 34:22–24.)

There is a discrepancy as to how Plaintiff came into possession of John Cegielski's cellphone. Plaintiff alleges that after he left the college campus, he stopped to get gas and

discovered that a cellphone had been left in his cab. (AC ¶ 32; Pl. Dep. II, 71:23–72:6.) He claims that he placed the phone in the glove compartment before notifying the dispatcher. (Pl. Dep. II, 75:23–76:8.) He testified that he planned to return the phone if the Cegielski brothers came back with the cab fare they owed. (Id. 76:12–19.)

On the other hand, in an affidavit Plaintiff submitted to the Court in response to a prior motion, he claimed that he chased John Cegielski from the taxi and demanded that he use his iPhone to call his friends to bring the rest of the money. (Pl. Dep. I, 63:6–64:12.) However, Plaintiff testified that the affidavit was incorrect, and that once John Cegielski left the cab, he never saw him with his phone. (Id. 64:3–25.)

According to John Cegielski, Plaintiff grabbed his cellphone from his hands after he had paid only a portion of the cab fare. (County Defs.' 56.1 ¶¶ 5, 6; Femia Decl., Ex. B, Supporting Dep. of John Cegielski, ECF No. 125-5.) Robert Cegielski reported to the Nassau County police that he witnessed Plaintiff forcibly take his brother's cellphone. (County Defs.' 56.1 ¶ 7; Femia Decl., Ex. D, Supporting Dep. of Robert Cegielski, ECF No. 125-7). Both Cegielski brothers independently identified Plaintiff in a photo array as the individual who took John Cegielski's cellphone. (County Defs.' 56.1 Stmt. ¶ 8; Femia Decl., Exs. B, D.)

## B. The Arrest and Charges

According to Plaintiff, on March 4, 2013, his dispatcher called to inform him that the police were there and wanted to talk to him about a cellphone. (Pl. Dep. II, 83:2–84:13.) Plaintiff testified that when he arrived at Dashing Dans a few minutes later, the police had left to handle another matter but had left a number for him to contact them. (Id. 85:2–25.) Plaintiff called the number and spoke to a Nassau County detective, (Id. 86:16–22), who informed him that John Cegielski had complained about the incident to one of his relatives who is a police chief. (Id. 88:13–89:5.)

Plaintiff testified that the detective informed him that he would not be arrested, and that the detective would just come by his house to pick up the phone. (Id. 89:17–90:7; 92:2–21.)

However, after informing his father about the incident and the detective's phone call, Plaintiff decided to drive to the satellite precinct in Westbury and speak to someone there to explain what had happened the night before. (Id. 92:22–95:24.) Once at the local precinct, Plaintiff called the detective again from his car to notify him of his intentions. (Id. 100:5–14.) The detective showed up right away with another officer and Plaintiff gave him the cellphone. (Id. 101:22–103:6.) Plaintiff testified that the officers informed him that he was not going to be arrested, but that they handcuffed him in their car and drove him to the Second Precinct. (Id. 105:4–23; 117:25–118:4.) According to Plaintiff, the police informed him that the reason they were bringing him to the precinct was because John Cegielski's uncle was a four or five-star police chief.[4] (Id. 106:15–107:7.) Plaintiff testified that once he arrived at the police station, he neither asked nor thought that he was under arrest even though he was fingerprinted, handcuffed, and had his mugshot taken. (Id. 107:11–108:7.) At some point, Detective Dowling read Plaintiff his rights and informed him that he was under arrest for stealing the cellphone. (Id. 108:17–109:24.) Plaintiff testified that he had explained the entire situation to Detective Dowling but that he could tell she did not believe him. (Id. 110:16–111:25.) In his signed statement to Detective Dowling, which Plaintiff affirmed at his deposition, he stated that John Cegielski had informed him that he left his phone in the cab while Plaintiff was trying to get him to pay the balance of the fare. (Femia Decl., Ex. G, Mevyo Statement, March 5, 2013, ECF No. 125-10; see also Pl. Dep. I, 54:15-20.) Plaintiff further stated

---

[4] According to the testimony of Robert and John Cegielski, neither of them have any family members or know any members of the Nassau County police department. (R. Cegielski Dep. 154:21–156:6; J. Cegielski Dep. 100:3–12.) And, despite the Court's prior order, Plaintiff has failed to identify the Nassau County Police official referred to as the "three[-]star chief" in his complaint who is allegedly related to the Cegielski Defendants. See Electronic Order, July 23, 2015.)

that he "told the kid that he could call the cab company and [he] gave him the phone number and if the phone was in [his] cab, he could get it back when he brought the money to the cab company." (Femia Decl., Ex. G, Mevyo Statement; see also Pl. Dep. I, 54:24-56:6.) Plaintiff claimed that he found the phone in his cab after he went back to Dashing Dans. He then turned the phone off and put it in his private car. (Femia Decl., Ex. G, Mevyo Statement; see also Pl. Dep. I, 56:16-22.)

Later that night Plaintiff was transferred to police headquarters in Mineola where he spent the night. (Pl. Dep. II,115:8–16.)

On Tuesday, March 5, 2013, Plaintiff was arraigned on the charge of robbery in the third degree in Hempstead District Court where he entered a plea of not guilty. (Id. 119:23–121:8; County Defs.' 56.1 Stmt. ¶¶ 13, 14.) He was then transferred to Nassau County Correctional Center and was released on bail the same day. (Pl. Dep. II, 121:18–122:15.) On February 20, 2014, upon Plaintiff's motion, the Court dismissed the charge against Plaintiff finding that "there [was] no inference that the defendant intended to permanently deprive the complainant of his phone." (Mevyo Aff., Ex. 6.)

## C. Procedural History

On February 27, 2014, Plaintiff, through an attorney, initiated the instant action asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), conspiracy and conversion claims, and various state law claims against the Defendants. (Compl., ECF No. 1.) The case was initially assigned to then-District Court Judge Joseph F. Bianco. On February 9, 2015, Judge Bianco granted in part and denied in part Defendants' Bertone and Ardamis' motion to dismiss the complaint and any cross-claims made by any Defendants. (ECF No. 34.) Specifically, the Court granted Defendants' motion with respect to the Section 1983 claims, conversion and conspiracy

claims, and denied the motion with respect to the assault claim.  (Id.)  The Court also granted Plaintiff's motion to amend the complaint.  (Id.)

On February 16, 2015, Plaintiff filed an amended complaint asserting violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in violation of Section 1983, a Monell claim, a conspiracy claim, and various state law claims.  (See AC.)  Specifically, Plaintiff contends: (1) that he was falsely arrested and imprisoned in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments; (2) that he was subjected to unreasonable searches in violation of the Fourth and Fourteenth Amendments; (3) that he was maliciously prosecuted and subjected to an abuse of process in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments; (4) that his rights to freedom of speech and association were infringed in violation of the First and Fourteenth Amendments; and (5) that he was deprived of due process and equal protection in violation of the Fifth and Fourteenth Amendments.  (Id. ¶¶ 40–67.) Additionally, Plaintiff alleges state law claims of defamation, false arrest and false imprisonment, intentional infliction of emotional distress, malicious prosecution, abuse of process, conspiracy, and civil assault.  (Id. ¶¶ 69–93.)  Defendants filed cross-claims against each other.

Judge Bianco recused himself from the case in April 2017 and the case was reassigned to the Honorable Judge Denis R. Hurley who set a briefing schedule for the Defendants' summary judgment motions.  (ECF No. 85; Electronic Order, June 12, 2018; Electronic Order, July 24, 2018.)  However, on August 23, 2018, in the midst of the briefing schedule, Magistrate Judge Anne Y. Shields granted Plaintiff's attorney permission to withdraw as counsel (ECF No. 110), and on September 21, 2018, Plaintiff, through his prior counsel, advised the Court that he would appear pro se.  (ECF No. 112.)  Magistrate Judge Shields then entered a scheduling order directing

all parties to appear for a status conference on October 24, 2018.  (Electronic Order, Sept. 24, 2018.)

On September 28, 2018, the case was reassigned to the undersigned.  (Electronic Order, Sept. 28, 2018.)  Plaintiff then failed to appear for the October 24, 2018 status conference.  (ECF No. 115.)  Accordingly, Magistrate Judge Shields entered a Civil Conference Minute Order noting that the Defendants had drafted and served their respective motions for summary judgment before Plaintiff's counsel withdrew.  (Id.)  She directed the Defendants to file status letters to request permission from the district court judge to file their unopposed summary judgment motions by November 7, 2018.  (Id.)  Plaintiff was ordered to respond to those letters by November 21, 2018.  On November 7, 2018, the Defendants filed a joint letter motion requesting that they be permitted to file their unopposed summary judgment motions.[5]  (ECF No. 118.)  Plaintiff did not comply with Magistrate Judge Shields' Order to file a response.

On December 6, 2018, the undersigned ordered Plaintiff to respond to the Defendants' motion letters or indicate via letter to the Court that he intends to prosecute the lawsuit, warning that failure to respond may result in dismissal for failure to prosecute.  (Electronic Order, Dec 6, 2018.)  In response, Plaintiff filed a hand-written letter dated January 3, 2019 indicating his intention to continue to prosecute this case.  (ECF No. 119.)  The letter did not address the Defendants' motion letters or previously-served motions for summary judgment.  (Id.)  Considering Plaintiff's newfound *pro se* status, the Court directed the Defendants to re-serve their motions on Plaintiff and granted him additional time to oppose the motions.  (Electronic Order, Feb 1, 2019).  Plaintiff failed to serve or file any opposition; the Defendants filed their unopposed motions in accordance with the Court's order.  (See ECF Nos. 123, 124, 125, 126.)

---

[5] Defendant Jeannotte was not included in this letter motion, as he filed a separate letter motion to dismiss the amended complaint.  (ECF No. 117.)

# II. DISCUSSION

## A.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. . . ." Marvel Characters, 310 F.3d at 286 (citing Matsushita, 475 U.S. at 587; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)).  To defeat a properly supported motion for summary judgment, "the non[-]moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita, 475 U.S. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586 (citations omitted).  Mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment.  See Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).  Unless the non-moving party

produces "significant probative evidence" demonstrating that a factual dispute exists, summary judgment is appropriate. <u>Anderson</u>, 477 U.S. at 249.

Additionally, "[a] *pro se* party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a *pro se* plaintiff's claims are subject to a final dismissal." <u>Ferguson v. Bizzario</u>, No. 09-CV-8106, 2010 WL 4227298, at *3 (S.D.N.Y. Oct. 19, 2010). Nevertheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." <u>Rodriguez v. Hahn</u>, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted); <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir.1998) (plaintiff "may not rely on conclusory allegations or unsubstantiated speculation"); <u>Johnson v. Al Tech Specialties Steel Corp.</u>, 731 F.2d 143, 147 n.2 (2d Cir. 1984) ("a mere allegation in [a] pleading [is] insufficient to defeat a summary judgment motion" (internal quotation marks omitted)).

"[W]here, [as here,] the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" <u>Vt. Teddy Bear Co. v. 1–800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004) (quoting <u>Amaker v. Foley</u>, 274 F.3d 677, 681 (2d Cir. 2001)). Even where there is no controverting statement from the nonmoving party, "the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production. . . ." <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 194 (2d Cir. 2014). However, "the court may rely on other evidence in the record even if uncited." <u>Id.</u> (citing Fed. R. Civ. P. 56(c)(3).)

**B. Standard for Section 1983 Claims**

Section 1983 provides a remedy for constitutional deprivations occasioned by state actors. To maintain a Section 1983 claim, the plaintiff must establish that the conduct complained of: (1) was committed by a person acting under color of state law; and (2) deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution. See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). When a plaintiff asserts a Section 1983 claim against a municipal defendant, plaintiff must also demonstrate that the constitutional deprivation "resulted from a municipal custom or policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991). Municipal liability is "an extension of liability, not an independent cause of action, and therefore requires an underlying constitutional violation." Soto v. City of New York, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)).

Plaintiff alleges that he was falsely arrested and imprisoned and that he suffered malicious prosecution and abuse of process in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. He also alleges that his First Amendment right to free speech and association were violated, and that he was deprived of due process and equal protection under the Fifth and Fourteenth Amendments. Plaintiff claims that Defendant Rice and the Police Officers are liable both personally and in their official capacities as employees of Nassau County.[6] (AC ¶ 40.) He further alleges that Nassau County is liable for the acts of these individual Defendants pursuant to Monell v. Dep't of Social Services, 436 U.S. 658, 694–95 (1978).

---

[6] Where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts within the Second Circuit "have consistently dismissed the official capacity claims as redundant." Phillips v. County of Orange, 894 F. Supp. 2d 345, 384, n.35 (S.D.N.Y. 2012) (collecting cases). Because Nassau County is named in the amended complaint, the claims against the Police Officers and Rice, in their official capacities are duplicative and are therefore dismissed. See Field Day, LLC v. County of Suffolk, 799 F. Supp. 2d 205, 214 (E.D.N.Y. 2011) (dismissing claims against individual on summary judgment motion because the real party in interest was the County and it was a named party to the action).

As Plaintiff fails to establish that his constitutional rights were violated, the Court grants summary judgment on the Section 1983 claims.

### 1. False Arrest and Imprisonment Claims[7]

The County Defendants assert that Plaintiff has failed to establish federal claims for false arrest and false imprisonment, and that, in any event, they are entitled to qualified immunity.[8]  The Court agrees.

#### a. Standard

A plaintiff cannot prevail on a claim for false arrest if the defendant had probable cause to arrest the plaintiff.  Jaegly v. Couch, 439 F.3d 149, 151–52 (2d Cir. 2006).  The Court assumes *arguendo* that defendants bear the burden of proving that there was probable cause for plaintiff's arrest.  Blau v. Suffolk Cty., No. 11-CV-4818, 2016 WL 426515, at *3 (E.D.N.Y. Feb. 3, 2016).

Probable cause exists where "the arresting officer [has] knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)).  A court evaluates the existence of probable cause in light of the totality of the circumstances and

---

[7] "False arrest is simply false imprisonment accomplished by means of an unlawful arrest."  Jenkins v. City of New York, 478 F.3d 76, 88 n.10 (2d Cir. 2007) (quoting 59 N.Y. Jur. 2d False Imprisonment § 1.)  "False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest" id., therefore, the Court's analysis applies to both claims simultaneously.

[8] Plaintiff's amended complaint also alleges unreasonable search and seizure in violation of his Fourth and Fourteenth Amendment rights.  However, Plaintiff fails to make clear how this claim is distinguishable from his false arrest claim.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (recognizing that a Section 1983 claim for false arrest rests on the Fourth Amendment individual right to be free from unreasonable seizures); United States v. Robinson, 414 U.S. 218, 235–36 (1973) (A search incident to a lawful arrest is well-established as reasonable under the Fourth Amendment.).  The Court therefore evaluates Plaintiff's unreasonable search and seizure claim and Plaintiff's false arrest and imprisonment claim, as a single claim.  See Hogan v. City of New York, No. 04-CV-3298, 2007 WL 9710294, at *3, n.4 (E.D.N.Y. March 12, 2007).

.

focuses on the facts available to the arresting officer at the time of the arrest. Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citations omitted). Where there is "no dispute as to the pertinent events and the knowledge of the officers," the existence of probable cause may be determined as a matter of law. Weyant, 101 F.3d at 852.

b. Analysis

The County Defendants argue that the individual officers had probable cause to arrest Plaintiff based on the following: (1) Plaintiff's acknowledgement that he drove the Cegielski brothers in his cab on March 3, 2013 and took possession of John Cegielski's cellphone; (2) John Cegielski's report to the police that his cellphone was forcibly taken from him while riding in Plaintiff's cab; (3) Robert Cegielski's statement to the police that Plaintiff forcibly took his brother's cellphone from him; and (4) the Cegielski brothers' independent identification of Plaintiff from a photo array. (County Defs.' Mem. of Law, ECF No. 125-3, at 6–7.)

The Court agrees and finds that Plaintiff's written statement and deposition testimony concerning his statements to the police are, by themselves, sufficient to establish probable cause for his arrest. It is undisputed that Plaintiff admitted to (1) telling John Cegielski that he would not get his phone back until he paid the balance of the cab fare and, (2) subsequently, coming into possession of John Cegielski's phone. See Pl. Dep. II, 127:10-25 ("I shouted and tell him, well, you owe me the fare. [ ] when you bring the remainder amount for the fare, if the phone is in the car, you will definitely get it back."); Femia Decl., Ex. G, Mevyo Statement ("I told the kid that he could call the cab company and I gave him the phone number and if the phone was in my cab, he could get it back when he brought the money to the cab company.")).

Furthermore, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or

eyewitness," <u>Martinez</u>, 202 F.3d at 634 (citation omitted), "unless the circumstances raise doubt as to the person's veracity." <u>Panetta</u>, 460 F.3d at 395 (citing <u>Singer</u>, 63 F.3d at 119). Additionally, "[a] positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest." <u>Celestin v. City of New York</u>, 581 F. Supp. 2d 450, 431 (E.D.N.Y. 2008) (citing <u>Miloslavsky v. AES Engineering Soc., Inc.</u>, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), <u>aff'd</u>, 993 F.2d 1534 (2d Cir. 1993). Therefore, as the Cegielski brothers both attested to the fact that Plaintiff took John Cegielski's phone in sworn statements to the police, and individually identified Plaintiff from a photo array prior to his arrest, probable cause to arrest existed. (<u>See</u> Femia Decl., Supporting Deposition of Robert Cegielski, Ex. D; Supporting Deposition of John Cegielski, Ex. B.)

Plaintiff's allegation that he was arrested without probable cause because the Cegielski brothers were related to a three-star police chief is unsupported by any admissible evidence. (<u>See</u> AC ¶ 47.) In fact, Plaintiff failed to identify the "three-star police chief" allegedly related to the Cegielski Defendants after this Court ordered him to do so by August 15, 2015.[9] (<u>See</u> Electronic Order, July 23, 2015.) <u>See also</u> <u>McZorn v. Endicott Police Dep't</u>, No. 06-CV-0033, 2008 WL 163581, at *7 (N.D.N.Y. Jan. 16, 2008) ("Even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events is sufficient to establish probable cause to arrest." (citing <u>Mistretta v. Prokesch</u>, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998)). Even accepting Plaintiff's full version of the events, he has not created a genuine issue of material fact regarding probable cause.

Notably, even if the Court did not find as a matter of law that there was probable cause for Plaintiff's arrest, the Police Officers would still avoid liability under the doctrine of qualified immunity. Qualified immunity protects a police officer from liability for damages if he can

---

[9] Additionally, Plaintiff has not identified the officer who allegedly made the statement about the "three-star police chief" and, therefore, the statement cannot be considered an admission by any of the Police Officer Defendants.

demonstrate that there was "arguable probable cause" for the arrest. Finigan v. Marshall, 574 F.3d 57, 61 (2d Cir. 2009). Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) "officers of reasonable competence could disagree on whether the probable cause test was met." Id. (internal quotations and citation omitted). As with probable cause, the Court inquires into facts known to the arresting officers at the time of arrest. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). The Court also finds that there was at least arguable probable cause to arrest Plaintiff, and that the officers' actions were objectively reasonable. Accordingly, construing the evidence in a light most favorable to the Plaintiff, the Court finds that there is no genuine issue for trial on the Section 1983 false arrest and imprisonment claims and, therefore, such claims are dismissed.

### 2. Malicious Prosecution Claims

The County Defendants also argue that Plaintiff has failed to establish a federal claim for malicious prosecution. The Court agrees.

a. Standard

"In order to prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, [ ] and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). New York "law . . . places a heavy burden on malicious prosecution plaintiffs." Smith-Hunter v. Harvey, 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750, 752 (N.Y. 2000). To survive summary judgment on a malicious prosecution claim, a plaintiff must demonstrate: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Savino v. City of

New York, 331 F.3d 63, 72 (2d Cir. 2003) (quoting Colon v. City of New York, 60 N.Y.2d 78, 82 (1983)).

As with a false arrest claim, the "existence of probable cause is a complete defense to a claim of malicious prosecution in New York," Manganiello, 612 F.3d at 161–62 (alterations, citations, and quotation marks omitted), "unless some intervening fact exonerating plaintiff has become known to defendants between the time of detention and the time of prosecution." Williams v. City of New York, No. 02-CV-3693, 2003 WL 22434151, at *5 (S.D.N.Y. Oct. 23, 2003), aff'd, 120 Fed. App'x. 388 (2d Cir.2005) (summary order) (quoting Feinberg v. Saks & Co., 56 N.Y.2d 206, 210 (1982)); see also McDermott v. City of New York, No. 94-CV-2145, 1995 WL 347041, at *5 (E.D.N.Y. May 30, 1995) ("In the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie.").

b. Analysis

Here, there is no evidence in the record that the probable cause "justifying [Plaintiff's] arrest was dissipated through the discovery of some intervening fact after the arrest." Oquendo v. City of New York, No. 14-CV-2582, 2017 WL 6729850, at *5 (E.D.N.Y. Nov. 15, 2017). No new facts came to light after Plaintiff's arrest, and the Cegielski brothers remained consistent in their identification of Plaintiff and their accusations against him. Brown v. City of New York, No. 12-CV-3146, 2014 WL 5089748, at *8 (S.D.N.Y. Sept. 30, 2014) (granting summary judgment to the defendants on malicious prosecution claim where probable cause existed at the time of the plaintiff's arrest and "no new facts came to light after [p]laintiff's arrest"). Thus, Plaintiff's

malicious prosecution claim also fails as a matter of law because Defendants had probable cause to prosecute Plaintiff for robbery in the third degree.

Additionally, as with a false arrest claim, an officer is entitled to qualified immunity against a claim of malicious prosecution if the officer had arguable probable cause to arrest the plaintiff, and the officer's information about the probable cause does not adversely change. See Betts v. Shearman, 751 F.3d 78, 82–83 (2d Cir. 2014). Even if a jury could conclude that there was no probable cause to prosecute Plaintiff, it is clear that police officers of reasonable competence could disagree as to whether Plaintiff had committed robbery in the third degree, thus establishing arguable probable cause to prosecute him under New York law, and thereby entitling the County Defendants to qualified immunity. Thus, the Court grants summary judgment on Plaintiff's Section 1983 malicious prosecution claims.

### 3. Abuse of Process Claims

a. Standard

In order to establish liability for malicious abuse of process under Section 1983, a plaintiff must establish the claim's elements under state law. See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, "'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act; (2) with the intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" Savino, 331 F.3d at 76 (quoting Cook, 41 F.3d at 80). "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." Lopez v. City of New York, 901 F. Supp. 684, 691 (S.D.N.Y. 1995). "There must be an abuse of process, that is, a use of process that

has as its direct object the achievement of an improper and ulterior purpose or objective." Pinter v. City of New York, 976 F. Supp. 2d 539, 568 (S.D.N.Y. 2013) (internal quotation marks omitted).

    b.  Analysis

Plaintiff's abuse of process claims fails because there is no evidence in the record that the County Defendants intended to harm Plaintiff without justification or sought to "obtain a collateral objective that is outside the legitimate ends of the process." See Savino, 331 F.3d at 77 ("[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution."). As discussed *supra*, the Court finds that there was probable cause to arrest and prosecute Plaintiff. "[W]hile the law is not entirely settled on this point, the weight of authority holds that the presence of probable cause negates a claim for abuse of criminal process." Pinter, 976 F. Supp. 2d at 568-69 (collecting cases). Moreover, the police officers are at the very least entitled to qualified immunity on this claim.[10] See Mangino v. Inc. Vill. of Patchogue, 808 F.3d 951, 959 (2d Cir. 2015) (finding that defendant was entitled to qualified immunity for an abuse of process claim where defendant had probable cause); Hoyos v. City of New York, 999 F. Supp. 2d 375, 385 (E.D.N.Y. 2013) (same).

Accordingly, the County Defendants are entitled to judgment as a matter of law with respect to Plaintiff's Section 1983 abuse of process claims.

### 4.  First Amendment Claims

The County Defendants argue that Plaintiff's First Amendment claims fail as a matter of law as such claims are entirely dependent on the validity of the false arrest, false imprisonment and malicious prosecution claims. (County Defs.' Mem. of Law at 14–15.) Therefore, the County Defendants contend that because these claims fail, the related First Amendment claims must also

---

[10] As discussed *infra*, any claim against the County also fails because Plaintiff cannot establish Monell liability.

fail.  (Id.)  The County Defendants additionally contend that Plaintiff has failed to demonstrate a

violation of his speech or association rights. (Id.)  Because the Court finds that Plaintiff has failed

to demonstrate a violation of his free speech or association rights, it grants summary judgment on

Plaintiff's First Amendment claims.

a. Free Speech Claims

A plaintiff who alleges a violation of his right to free speech must prove that official

conduct actually deprived him of that right.  See Colombo v. O'Connell, 310 F.3d 115, 117 (2d

Cir. 2002).  To avoid summary judgment, Plaintiff "must come forward with evidence showing

either that (1) defendants silenced him or (2) defendants' actions had some actual, non-speculative

chilling effect on his speech."  Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir. 2008)

(citing Colombo, 310 F.3d at 117).

After reviewing the record, the Court finds that Plaintiff fails to assert any factual

allegations setting forth specific instances in which Plaintiff "desired to exercise [his] First

Amendment rights but was chilled by" the alleged conduct of the County Defendants.  Mangano

v. Cambariere, 2007 WL 2846418, at *2 (S.D.N .Y. Sept. 27, 2007) (granting summary judgment

on First Amendment retaliation claim where there was no evidence to support a finding that

defendants' alleged actions deterred plaintiff from engaging in free speech or seeking judicial

redress).  The amended complaint's allegation that Plaintiff has been deprived of "the right to

speak and associate freely" under the First Amendment (AC ¶ 63) alone is insufficient to withstand

summary judgment.  See Morgan v. County of Nassau, No. 13-CV-06524, 2017 WL 664027, at

*16 (E.D.N.Y. Feb. 17, 2017) (granting summary judgment on free speech claim where the record

was "devoid of any evidence suggesting that plaintiffs were silenced or that their speech was chilled by the officers' conduct").[11]

Because the record fails to demonstrate any facts from which a reasonable juror could find that Plaintiff was "silenced" or his "speech was chilled," summary judgment is warranted.

Additionally, the Police Officer Defendants are entitled to qualified immunity on Plaintiff's free speech claim. See J.H. v. Bratton, 248 F. Supp. 3d 401, 412-13 (E.D. N.Y. 2017) ("[A] police officer is entitled to qualified immunity where [ ] his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known ….")

In sum, as the record is devoid of any evidence of a First Amendment violation, Defendants are entitled to qualified immunity.

Accordingly, the Court grants the County Defendants' motion for summary judgment on Plaintiff's free speech claims.

b. Association Claims

"The Supreme Court has recognized a right of association with two distinct components— an individual's right to associate with others in intimate relationships [i.e., intimate association] and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment [i.e., expressive association]. . . ." Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 617–18 (1984)). "Expressive association is considered a form of 'speech,'" and "is protected by the First Amendment on that basis." Birmingham v. Ogden, 70 F. Supp. 2d 353, 368–69 (S.D.N.Y. 1999) (collecting cases).

---

[11] To the extent Plaintiff alleges that the County Defendants deprived him of a constitutional right by allegedly defaming him in spreading false accusations of criminal wrongdoing about him, (AC ¶¶ 54, 71), such a Section 1983 claim fails as a matter of law. "Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004).

As discussed above, Plaintiff asserts only that the County Defendants infringed his right to "associate freely" without identifying which association right he is claiming—intimate or expressive. (AC ¶ 63.) To the extent Plaintiff argues a deprivation of the right to expressive association, that claim is duplicative of his free speech claim and suffers the same fate as described above. See Econ Opportunity Comm'n of Nassau Cty., Inc. v. Cty. of Nassau, 106 F. Supp. 2d 433, 439 (E.D.N.Y. 2000).

In the event Plaintiff's allegation that he "faced the dread and terror of a felony conviction" which would result in "separation from family," (AC ¶ 58), is considered a claim of deprivation of intimate association, it fares no better.[12] "The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state." Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York, 502 F.3d 136, 143 (2d Cir. 2007). "[C]ourts within this Circuit specifically addressing the right to intimate association vis-a-vis parent-child relationships have analyzed the right under the principles of substantive due process rather than the First Amendment." Licorish–Davis v. Mitchell, No. 12-CV-601, 2013 WL 2217491, at *6 (S.D.N.Y. May 20, 2013) (collecting cases). As discussed infra, Plaintiff fails to allege a due process claim.

In any event, the Court finds that the Police Officer Defendants are entitled to qualified immunity on Plaintiff's familial association claim because there is no plausible allegation that they intentionally interfered with Plaintiff's relationship with his family. See Lara-Grimaldi v. County of Putnam, No. 17-CV-622, 2018 WL 1626348, at *17 (S.D.N.Y. March 29, 2018) (citing Cruz v. City of New Rochelle, No. 13-CV-7432, 2017 WL 1402122, at *28 (S.D.N.Y. Apr. 3, 2017)

---

[12] Plaintiff testified that a few months after the incident, his girlfriend and their one-year old child moved out of the home they lived in together. (Pl. Dep. II, 24:3-25:25.) Based on this fact, and in light of Plaintiff's pro se status, the Court analyzes plaintiff's First Amendment claim as an intimate association claim.

(holding that "[b]ecause the Second Circuit has not decided whether intentional interference with the familial relationship is necessary to make out a constitutional claim of deprivation of the right to familial association, and other courts have been split on this issue, both in other Circuits and within this Circuit, [ ], the law on this issue is not clearly established, and Defendants are therefore entitled to qualified immunity on this claim" (internal citations omitted)). Accordingly, the Court grants the County Defendants' motion for summary judgment on Plaintiff's association claims.

### 5. Due Process Claims

In addition to alleging that the County Defendants violated Plaintiff's First, Fourth, and Sixth Amendment rights, Plaintiff appears to allege that the County Defendants' actions also violated his right to due process under the Fifth and Fourteenth Amendments.[13] However, because Plaintiff's due process claims are premised on the same factual allegations underlying his Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution, the due process claims must be dismissed as duplicative. Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim.") (internal quotation marks omitted). See also Jackson ex rel. Jackson v. Suffolk Cnty., 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015) ("Because the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest, false imprisonment, or malicious prosecution, plaintiffs cannot state a substantive due process claim against defendants based on

---

[13] As all of the allegations in the amended complaint are directed at the County of Nassau along with County officials and not any United States government employee, Plaintiff cannot assert a violation of his due process rights under the Fifth Amendment. See Ambrose v. City of New York, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ("Because [p]laintiff's lawsuit does not allege any deprivation of his rights by the federal government, any due process claim he has against [defendants] is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment.").

such conduct."). Accordingly, summary judgment is granted to the County Defendants on Plaintiff's due process claims.

### 6. Equal Protection Claims

Liberally construed, Plaintiff's amended complaint alleges that the County Defendants discriminated against him based on his race. He alleges that "an attorney employed by defendant Rice . . . interrogated him about the incident, during which his integrity and honesty was racist-ly challenged on the basis that it was incredible to her that plaintiff, as a black male, would be intimidated and flee from white College Defendants." (AC ¶ 49; see also AC ¶ 56.)

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000). Discriminatory intent requires proof that "a discriminatory purpose has been a motivating factor" in the challenged action. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265–66 (1977). Moreover, "allegations of discrimination under the Equal Protection Clause 'require that intentional discrimination be alleged in a non-conclusory fashion.'" Chandrapaul v. City Univ. of N.Y., No 14-CV-790, 2016 WL 1611468, at *23 (E.D.N.Y. Apr. 20, 2016) (quoting Clyburn v. Shields, 33 Fed. App'x. 552, 555 (2d Cir. 2002) (summary order)). See also Bradshaw v. City of New York, No. 17-CV-1199, 2017 WL 6060781, at *13–14 (S.D.N.Y. Dec. 7, 2017) (granting defendant summary judgment on equal protection claim based on vague allegations and speculation that officer's actions were racially motivated).

Aside from Plaintiff's conclusory allegation in his complaint that the charge against him "appeared to be the result of injustice and racism" (AC ¶ 56), there is nothing in the record that indicates purposeful discrimination or that would allow a reasonable juror to conclude that Plaintiff

was treated differently because of his race. In fact, Plaintiff's own testimony about the interrogation does not support the notion that he was subject to any race-based discrimination. Rather, Plaintiff testified that when he was questioned by Detective Dowling, he felt like she did not believe him. (Pl. Dep. II, 110:25-111:5.) According to Plaintiff, Detective Dowling stated, "you're trying to tell me you ran from a few students . . . as big and aggressive [as] you look, you're trying to tell me you ran from those little kids." (Id. 111:13-16.) Where, as here, "there is no evidence that any actions were undertaken with purposeful discrimination, any selective treatment compared to any other similarly situated parties, any intent to punish, or any intent to inhibit the exercise of any constitutional rights," summary judgment is appropriate. Jackson, 87 F. Supp. 3d at 410–11; see also Adler v. Kent Village Housing Co., Inc., 123 F. Supp. 2d 91, 98 (E.D.N.Y. 2000) ("[S]ummary judgment is appropriate in cases alleging equal protection violations where plaintiff's claims are premised upon conjecture and speculation.") (internal quotation and citation omitted). Having found no facts in the record that would support Plaintiff's claim of discrimination in violation of the Equal Protection Clause, the Court grants summary judgment for Defendants on Plaintiff's claims.

### 7. Municipal Liability

Plaintiff's claim against Nassau County based on municipal liability also fails as a matter of law.

To defeat summary judgment on a claim for municipal liability, a plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. and N.J., 615 F.3d 129, 140 (2d Cir. 2010) (citation omitted); see also Monell v. Dep't of Social Services, 436 U.S. 658, 694–95 (1978). Municipal liability is "an extension of liability, not an independent cause of action. . . ." Soto v.

City of New York, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)).

Plaintiff's municipal liability claim fails for two reasons. First, as discussed *supra*, Plaintiff has failed to establish any underlying constitutional violation. Second, Plaintiff fails to show that a particular municipal policy or custom caused a deprivation of his rights. Plaintiff asserts in conclusory fashion that Nassau County "operated under an official custom or policy of tacit approval, consent, acquiescence or condonation of such misconduct," (AC ¶ 95), yet fails to offer any evidence of a single policy, practice, or custom promulgated by Nassau County that could have caused the alleged violations of Plaintiff's constitutional rights. Such "[c]onclusory allegations of municipal custom or policy are insufficient." Davis v. Nassau Cnty., No. 06-CV-4762, 2011 WL 5401663, at *4 (E.D.N.Y. Nov. 5, 2011) (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (the "mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (citations omitted). Accordingly, the Court grants the County Defendants' motion for summary judgment on municipal liability.

**C.  District Attorney Rice's Liability**

"'[A] state prosecuting attorney who acted within the scope of his [or her] duties in initiating and pursuing a criminal prosecution,' 'is immune from a civil suit for damages under § 1983.'" Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) (quoting Imbler v. Pachtman, 424 U.S. 409, 410, 431 (1976)). Defendant Rice is absolutely immune to all claims because she was acting in a prosecutorial capacity during the events alleged. Accordingly, the Court grants the County Defendants' motion for summary judgment as to Defendant Rice.

**D.  Conspiracy Claims**

Plaintiff alleges a conspiracy claim against both the County Defendants and the College Defendants. Because it is unclear whether Plaintiff's conspiracy claim was brought under Section 1983 or pursuant to 42 U.S.C. § 1985 ("Section 1985"), and in light of Plaintiff's *pro se* status, the Court will analyze the claim under both provisions.[14]

### 1. Section 1983 Conspiracy

To prove a Section 1983 conspiracy, a plaintiff must show: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002). However, where all substantive Section 1983 claims against named state actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed. See Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy."); Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."). Where, as here, it has been established that there was no constitutional violation, there can be no conspiracy.

In any event, Plaintiff's Section 1983 conspiracy claims fail for the additional reason that his allegations that the County Defendants conspired with the College Defendants in having him arrested and prosecuted based on an alleged relationship between the Cegielski brothers and an unnamed "three-star chief" are unsubstantiated and conclusory. See Mitchell v. County of Nassau, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) ("A § 1983 conspiracy claim based on conclusory

---

[14] The County Defendants' moving papers only address Plaintiff's conspiracy claim under Section 1983 (see County Defs.' Mem. of Law at 18); however, the Cegielski Defendants address Plaintiff's conspiracy claim under both Section 1983 and Section 1985. (See Cegielski Defs.' Mem. of Law, ECF No. 124-1, at 6.)

allegations and unsubstantiated statements may not withstand a summary judgment motion where the record is devoid of any proof of an agreement among [d]efendants to act in concert to violate [p]laintiff['s] constitutional rights.") (internal quotation marks and citation omitted); Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998) (finding allegations insufficient to show conspiracy, noting that "the non-moving party may not rely on conclusory allegations or unsubstantiated speculation") (citations omitted). Thus, Plaintiff's Section 1983 conspiracy claims also fail because they are solely based on speculative and conclusory allegations that are unsubstantiated by the record.

### 2. Section 1985 Conspiracy

A plaintiff claiming violation of Section 1985(3) must prove "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (citing United Bd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828–829 (1983)). The alleged "conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.' " Id. at 1088 (quoting Scott, 463 U.S. at 829).

Because a claim under Section 1985(3) requires proof of discriminatory racial animus, the Court dismisses Plaintiff's Section 1985(3) claims for the same reasons it dismissed Plaintiff's equal protection claim. Plaintiff has failed to produce any evidence whatsoever, beyond his conclusory statement, that "defendants conspired to deprive plaintiff of his civil rights." (AC ¶ 90.) See Carson v. Lewis, 35 F. Supp. 2d 250, 271 (E.D.N.Y. 1999) (granting summary judgment

on Section 1985 conspiracy claim where there was no constitutional violation) (citing <u>Presnick v. Berger</u>, 837 F. Supp. 475, 480 (D. Conn. 1993) (granting summary judgment for defendants on Section 1985(3) claim where "plaintiff failed to make any factual allegations to support a claim of a civil rights violation" and "there is no evidence whatsoever on this record of any racial or otherwise class-based invidiously discriminatory animus"). Thus, as the Court has determined that Plaintiff's constitutional rights have not been violated, his Section 1985(3) conspiracy claims must be dismissed as well.

## E.  **Non-Moving Defendants and Jeannotte**

Defendants Matthew Maloney, Tyler Olli, and Adam Winne have not responded to the amended complaint. While Plaintiff previously reserved the right to move for default against these Defendants, (Electronic Order, July 23, 2015), there is no certificate of service of the amended complaint on the docket for them. In any event, the Court *sua sponte* grants summary judgment dismissing the federal claims against these non-moving Defendants because the claims are identical to those brought against the moving College Defendants, and therefore fail for the same reasons discussed herein. <u>See</u> <u>Hudson v. Universal Pictures, Corp.</u>, No. 03-CV-1008, 2004 WL 1205762, at *5 (E.D.N.Y. April 29, 2004) (citing <u>Pugh v. Goord</u>, 345 F.3d 121, 124 (2d Cir. 2003) ("A *sua sponte* award of summary judgment may well be appropriate if it is clear that all of the evidentiary material a party might submit is before the court and no material issue of fact exists."); <u>Diarama Trading Co., Inc. v. J. Walter Thompson USA, Inc.</u>, No. 01-CV-2950, 2005 WL 2148925, at *14 (S.D.N.Y. Sept. 6, 2005) (granting summary judgment to both moving and defaulting defendants where they were similarly situated), <u>aff'd</u> <u>sub nom.</u>, <u>Diarama Trading Co. v. J. Walter Thompson, Inc.</u>, 194 Fed. App'x. 81 (2d Cir. 2006) (summary order).

Finally, with respect to Defendant Jeannotte, his attorney filed a letter motion to dismiss the claims against him because, at his deposition, Plaintiff was unable to identify Jeannotte as one of the individuals involved in the incident. (ECF No. 117.) The Court finds it unnecessary to address whether this entitles Jeannotte to dismissal from this action because the Court *sua sponte* grants summary judgment in favor of Jeannotte on the federal claims against him for the same reasons as the non-moving Defendants. And, as discussed in the next section, the Court declines to exercise supplemental jurisdiction over any state law claims, thereby dismissing Jeannotte from this case.

## F.  State Law Claims

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. (AC ¶ 2.) However, as the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d. Cir. 2011). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of any viable federal claims, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and those state law claims are dismissed without prejudice.

### III. CONCLUSION

For the reasons set forth above, the Court GRANTS the Defendants' motions for summary judgment and DISMISSES all of Plaintiff's federal claims with prejudice. Further, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims and thus DISMISSES those state law claims without prejudice. Additionally, any cross-claims asserted by Defendants are necessarily DISMISSED without prejudice.

Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should he seek *in forma pauperis* status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to send a copy of this Order to the *pro se* Plaintiff and mark this case closed.

**SO ORDERED.**

Dated: March 16, 2020
Central Islip, New York

_____
                         **/s/ (JMA)**

Joan M. Azrack
United States District Judge